**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**ANTHONY AMAKER,**

                                    **Plaintiff,**

              **-v-**                                              **10-CV-0977A(Sr)**

**BRIAN S. FISCHER, et al.,**

                                    **Defendants.**

---

<u>**REPORT, RECOMMENDATION AND ORDER**</u>

              This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #11.


              Currently before the Court is defendants' motion to dismiss plaintiff's

amended complaint for failure to state a cause of action pursuant to Rule 12(b)(1) & (6)

of the Federal Rules of Civil Procedure.  Dkt. #32.  For the following reasons, it is

recommended that defendants' motion to dismiss be granted in part.


              <u>**PROCEDURAL HISTORY**</u>

              Plaintiff commenced this action against New York State Department of

Corrections ("NYSDOCS"), Commissioner Fischer; NYSDOCS Deputy Commissioner

LeClaire; Attica Superintendent Bradt; Attica Deputy Superintendent Chappius;

Sergeant ("Sgt."), Erhardt; and Corrections Officer ("C.O."), Cartwright by filing a

complaint on December 2, 2010.  Dkt. #1.  C.O. Klodzinski and C.O. Padlo;[1] who were named in the factual allegations of plaintiffs complaint but not in the caption, were added as defendants by Order entered February 17, 2011.  Dkt. #5.  Defendants moved to dismiss by Notice of Motion dated April 25, 2011.  Dkt. #10.

Plaintiff filed an amended complaint dated September 1, 2011 adding Deputy Superintendent Dolce; C.O. Adamy; C.O. Bust;[2] Captain Brown; C.O. Steck; Sgt. Cunningham; Sgt. Leonard; C.O. Hendzel; Nurse Sharpe;  Nurse Cygren; and C.O. O'Connors as defendants.  Dkt. #17.  By Decision and Order entered September 30, 2011, the Court directed that the amended complaint be served upon the additional defendants.  Dkt. #20.

On November 18, 2011, plaintiff filed a Motion to Amend his Complaint to add Captain Robinson; C.O. Malik; Lt. Lambert; C.O. Carney; C.O. Wegner; C.O. LaCappriuccia; Lt. Brawaski; Ms. Prusak; and C.O. Connors as defendants.  Dkt. #25.

Defendants filed a second motion to dismiss on March 27, 2012.  Dkt. #32.

---

[1] This defendant is identified as C.O. Piablo in CM/ECF but will be referred to as C.O. Piadlo, which is how this defendant is named in both the amended and proposed second amended complaints.

[2] The proposed amended complaint (Dkt. #25), replaces C.O. Bust with C.O. Buth, which is how the Court will refer to him in this Report, Recommendation and Order.

-2-

**FACTS**

At approximately 10:00 am on November 6, 2010, as plaintiff was walking to recreation, Sgt. Erhardt, C.O. Klodzinski[3] and C.O. Cartwright directed plaintiff to undergo a pat frisk.  Dkt. #25, ¶ 7.  Plaintiff alleges that C.O. Cartwright fondled his genitalia and ran his hands between his buttocks as Sgt. Erhardt and C.O. Klodzinski observed.  Dkt. #25, ¶ 7.  Plaintiff alleges that the forcible touching and squeezing of his penis, anus and testicles lasted 45 seconds, during which time C.O. Cartwright "was breathing hard and speaking in [plaintiff's] ear about there was an Amaker here before." Dkt. #25, ¶ 7.

Before plaintiff was allowed to leave, C.O. Cartwright directed plaintiff to take off his boots and provide an address to mail them out of the facility, even though numerous other inmates were allowed to wear similar boots.  Dkt. #25, ¶¶ 7-8.  Plaintiff mailed the boots to the Court.[4]  Dkt. #25, ¶ 8. Plaintiff was directed to return to his cell barefoot and was denied recreation.  Dkt. #25, ¶ 7.  Plaintiff claims that his boots were confiscated in retaliation for the award of a permanent injunction entered on June 23, 2010 which enjoined defendants in 06-CV-490 from precluding plaintiff's attendance at Nation of Islam services and classes on account of plaintiff's dreadlocks, and from punishing plaintiff for refusing to cut his hair or refusing to change his religious affiliation. 06-CV-490 at  Dkt. #245.

---

[3] C.O. Klodzinski is a defendant in plaintiff's civil rights action, 06-CV-490.

[4] The Court returned the boots to plaintiff on November 6, 2010.  07-CV-279 at Dkt. #115.

Despite correspondence with Deputy Superintendent Dolce,[5] plaintiff alleges that he has been not been allowed to attend Nation of Islam services and classes on Friday evenings.  Dkt. #25, ¶ 9.

On November 8, 2010, plaintiff wrote Deputy Superintendent Dolce to request special access to the law library.  Dkt. #25, ¶ 14.  Deputy Superintendent Dolce forwarded the request to C.O. Adamy, who afforded plaintiff "6 modules of callouts." Dkt. #25, ¶ 14.  When plaintiff requested additional time due to additional court deadlines, Deputy Superintendent Dolce and C.O. Adamy "conspired to limit his time further to only 3 modules."  Dkt. #25, ¶ 14.  In response to plaintiff's grievances, Deputy Superintendent Dolce and C.O. Adamy falsely stated that plaintiff was receiving regular access to the law library.  Dkt. #25, ¶ 15.  Plaintiff also alleges that Deputy Superintendent Dolce and C.O. Adamy prevented plaintiff from using the computer, word processor or type writer to prepare his legal papers.  Dkt. #25, ¶ 16.  Plaintiff alleges that an appeal was dismissed because of the limitation of his time in the law library.  Dkt. #25, ¶ 16.  In addition, due to a reduction in access to the law library due to a scheduling conflict during Ramadan, plaintiff alleges that he "has been unable to complete several appeals [sic] deadlines and filing of Notice of Appeals."  Dkt. #25, ¶ 17.

On November 29, 2010, C.O. Piadlo refused to allow plaintiff to enter the messhall for breakfast because plaintiff's dreadlocks were fastened into a ponytail with

---

[5]  Deputy Superintendent Sandra Doice [sic] is a defendant in 06-CV-490.

his hair and the rules regarding fastening of dreadlocks had recently been changed to require that dreadlocks be fastened with a rubberband.[6]  Dkt. #25, ¶ 10.  Plaintiff alleges that he was denied breakfast and lunch while other inmates with ponytails fastened with their hair were allowed to proceed to the mess hall.  Dkt. #25, ¶ 10.  When plaintiff asked to speak to Sgt. Erhardt, Sgt. Erhardt told plaintiff to return to his cell.  Dkt. #25, ¶ 10.  When plaintiff asked to speak to a lieutenant, C.O. Piadlo told plaintiff to "write whoever you want."  Dkt. #25, ¶ 10.

In December of 2010, Deputy Superintendent Chappius and C.O. O'Connors placed plaintiff's name on an escape risk list and have refused to remove erroneous information from plaintiff's files, including records relied upon for parole and transfer. Dkt. #25, ¶ 28.  Plaintiff alleges that the misinformation has been "created for retaliation purposes by [Deputy Commissioner] LeClaire and [Commissioner] Fischer and other former defendants in plaintiff's pending lawsuit on religious exercise for wearing dreadlocks."  Dkt. #25, ¶ 28.

In retaliation for the filing of a grievance against Nurse Sharpe for denial of medical care for a persistent cough following a cold, plaintiff alleges that Nurse Sharpe left a note for C.O. Hendzel and Nurse Cygren to read upon his arrival at sick call on February 4, 2011, which plaintiff complains is a violation of HIPAA.  Dkt. #25,

---

[6] Effective September 2, 2010, NYSDOCS' Directive 4914, titled Inmate Grooming Standards, was amended to allow dreadlocks, providing that inmates "wearing below shoulder length dreadlocks must tie them back in a ponytail with barrette, rubber band, or other fastening device approved by the Superintendent."

¶ 19.  Plaintiff complained that C.O. Hendzel's presence at sick call was a violation of

HIPAA, but Nurse Cygren informed plaintiff that C.O. Hendzel could remain.  Dkt. #25,

¶ 19.  Nurse Cygren accused plaintiff of trying to overdose and refused to provide

plaintiff with cough syrup.  Dkt. #25, ¶ 19.  Upon taking his blood pressure and

discovering it was high, plaintiff was placed in the infirmary for 72 hours of observation.

Dkt. #25, ¶ 19.  Plaintiff's grievance regarding the incident was denied by Lt. Brawaski.

Dkt. #25, ¶ 19.

Following plaintiff's move to C-block on February 23, 2011, plaintiff was

denied attendance at Nation of Islam services.  Dkt. #25, ¶ 21.  Upon investigation,

Captain Robinson informed plaintiff that he was not on the call out list, but the Imam

reviewed the call out list and informed plaintiff that he was on the call out list.  Dkt. #25,

¶ 21.

Plaintiff complains that since July of 2011, C.O. LaCappriuccia has been

denying plaintiff hot water during the 7 to 11 shift.  Dkt. #25, ¶ 33.

Plaintiff complains that C.O. Buth reviewed plaintiff's legal mail from the

Court of Claims on August 17, 2011.  Dkt. #25, ¶ 22.  Following plaintiff's complaint to

Superintendent Bradt,[7] as plaintiff was walking to the law library on August 21, 2011,

---

[7] Although Superintendent Bradt is not a defendant in 06-CV-490, he was the Superintendent at Elmira during the time frame that this Court found officials at Elmira in contempt of the permanent injunction in 06-CV-490. Testimony at the contempt hearing established that Superintendent Bradt instructed Captain Hughes not to inform Elmira correctional officers about the existence of the injunction. 06-CV-490 at Dkt. #297, pp.8 & 13.

C.O. Buth directed plaintiff to undergo a pat frisk.  Dkt. #25, ¶ 22.  C.O. Buth informed

plaintiff that he should have better things to do than complain about him reading

plaintiff's legal mail.  Dkt. #25, ¶ 22.  Plaintiff alleges that C.O. Buth committed a

"degrading act of rape" during the course of the pat frisk by rubbing plaintiff's penis,

fondling and squeezing plaintiff's buttocks and running his index finger across plaintiff's

anus.  Dkt. #25, ¶ 22.  When the pat frisk was complete, plaintiff alleges that C.O. Buth

told plaintiff "to go ahead and write more complaints" while plaintiff was at the law

library.  Dkt. #25, ¶ 23.  C.O. Malik and C.O. Steck are alleged to have been present

while C.O. Buth conducted the pat frisk.  Dkt. #25, ¶ 23.


        Plaintiff filed a rape complaint against C.O. Buth.  Dkt. #25, ¶ 25.  Sgt.

Leonard interviewed plaintiff about the complaint on August 28, 2011.  Dkt. #25, ¶ 25.

On September 1, 2011, C.O. Steck entered plaintiff's cell, spit chewing tobacco and

coffee on plaintiff's clothes and floor and confiscated plaintiff's legal documents and

food.  Dkt. #25, ¶ 26.


        Plaintiff also complains that he has been denied sick call and legal

supplies by Deputy Superintendent Dolce subsequent to the filing of the rape complaint

against C.O. Buth.  Dkt. #25, ¶ 27.  For example, plaintiff alleges that he was only

provided "9 sheets of writing paper and no carbon paper."  Dkt. #25, ¶ 27.  When Lt.

Brawaski interviewed plaintiff with respect to his complaint, Lt. Brawaski responded,

"[w]hy should we give you any more paper to write this bullshit about rape."  Dkt. #25,

¶ 27.

Since September 1, 2011, Ms. Prusak is alleged to have "intentionally conceal[ed] all the names of the officers in A-Block," thereby impeding his ability to file accurate grievances and court documents.  Dkt. #25, ¶ 34.

On September 23, September 27 and October 26, 2011, the Court conducted a hearing with respect to plaintiff's motion for contempt of the Court's permanent injunction enjoining defendants in 06-CV-490 from punishing plaintiff for refusing to cut his hair or refusing to change his religious affiliation and from precluding plaintiff's attendance at Nation of Islam services and classes because of his dreadlocks.

On November 1, 2011, plaintiff alleges that C.O. LaCappriuccia turned off the water in plaintiff's cell in retaliation for plaintiff's testimony in the contempt proceeding in 06-CV-490.  Dkt. #25, ¶ 29.  In addition, C.O. LaCappriuccia denied plaintiff breakfast.  Dkt. #25, ¶ 29.  Plaintiff's water was restored 24 hours later.  Dkt. #25, ¶ 29.

C.O. Connors is alleged to have threatened to remove plaintiff from the list for prescribed diet meals.  Dkt. #25, ¶ 29.

Prior to an interview regarding plaintiff's complaint of harassment, which plaintiff alleges was read by corrections officers, C.O. Wegner conducted a pat frisk during which he ran his fingers between plaintiff's buttocks."  Dkt. #25, ¶ 29.

On November 11, 2011, plaintiff alleges that C.O. Malik, C.O. Carney and Sgt. Erhardt "conspired with Lt. Lambert to retaliate while plaintiff was in the messhall." Dkt. #25, ¶ 30.  Specifically, plaintiff alleges that C.O. Malik and C.O. Carney removed two jars of water from plaintiff's cell and took it to Sgt. Erhardt, who falsely claimed it was alcohol. Dkt. #25, ¶ 30.  Plaintiff complains that Captain Robinson denied plaintiff due process during the resulting disciplinary hearing by depriving him of the ability to call witnesses and finding plaintiff guilty without evidence that the liquid contained alcohol.  Dkt. #25, ¶ 31.

On November 17, 2011, C.O. Long returned plaintiff's legal mail to plaintiff. Dkt. #25, ¶ 32. Plaintiff alleges that the disbursement form had been removed from his legal mail so as to allow C.O. Long to read his legal mail before returning it  to plaintiff.  Dkt. #25, ¶ 32.  After filing a grievance, plaintiff alleges that the power was cut off to his cell at 6:00 that evening and that at 8:30 p.m., C.O. Malik walked past his cell, whistling.  Dkt. #25, ¶ 32.

## DISCUSSION AND ANALYSIS

**Dismissal Standard - Rule 12(b)(1)**

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it.  *Markarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  To defeat a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *Id.*

Eleventh Amendment immunity

Defendants argue that the Eleventh Amendment divests the Court of jurisdiction over plaintiff's official capacity claims seeking monetary damages. Dkt. #32, p.11.

"The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." *Russell v. Dunston*, 896 F.2d 664, 667 (2d Cir.) (citations omitted), *cert. denied*, 498 U.S. (1990). "It is well-established that New York State has not consented to § 1983 suits in federal court and that § 1983 was not intended to override a state's sovereign immunity." *Mamot v. Board of Regents,* 367 Fed. Appx 191 (2d Cir. 2010), *citing Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-49 (2d Cir. 1977) *and Quern v. Jordan*, 440 U.S. 332, 342 (1979).

"The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods v. Roundout Valley Central School Dist. Bd of Educ.,* 466 F.3d 232, 236 (2d Cir. 2006).  Thus, the Eleventh Amendment also "bars claims for money damages against state officials acting in their official capacities." *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985).

In accordance with the *Ex Parte Young* doctrine, suits against state officials in their official capacities are permitted for prospective injunctive relief to stop ongoing violations of federal law.  *Mary Jo C. v. New York State & Local Ret.Sys*., 707 F.3d 144, 166 (2d Cir. 2013).  However, "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."  *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006); *Keitt v. New York City*, 882 F. Supp.2d 412, 449 (S.D.N.Y. 2011) (conjecture that plaintiff could be returned to Attica in the future is insufficient to sustain claim for injunctive relief).

As plaintiff is no longer incarcerated at Attica, it is recommended that his claims for injunctive relief against officials at Attica be dismissed as moot except to the extent that plaintiff may be seeking expungement from his record of the allegedly false misbehavior report regarding possession of alcohol. *See Navarez v. Hunt,* 770 F. Supp.2d 565, 568 (W.D.N.Y. 2011) (official capacity claim for expungement of disciplinary charges is not barred by Eleventh Amendment).  In addition, plaintiff's attempt to enjoin Commissioner Fischer and Deputy Commissioner LeClaire from relying upon misinformation contained in records used to assess plaintiff's suitability for transfer and parole is not barred by the Eleventh Amendment.

**Dismissal Standard - Rule 12(b)(6)**

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  The Court remains obligated to construe a *pro se* complaint liberally and to interpret *pro se* pleadings to raise the strongest arguments that they suggest.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) (district court obliged to interpret *pro se* complaint to raise those causes of action supported by the facts alleged regardless of the causes of action asserted).


Exhaustion of Administrative Remedies

Defendants argue that plaintiff has conceded his failure to properly exhaust administrative remedies with respect to several claims and has failed to allege compliance with the grievance process with respect to other claims.  Dkt. #32, p.13.


Plaintiff responds that exhaustion is an affirmative defense and proffers multiple reasons, including defendants' interference with the inmate grievance system, to excuse his failure to properly exhaust some of his claims.  Dkt. #47, pp.21-22.


The PLRA states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In *Porter v. Nussle*,

the Supreme Court held that exhaustion of administrative remedies is mandatory and

should be applied broadly.  534 U.S. 516, 524 (2002).  Because exhaustion is an

affirmative defense rather than a jurisdictional predicate, however, a motion to dismiss

pursuant to Rule 12(b)(6) should only be granted if it is clear from the face of the

complaint that plaintiff has failed to exhaust his administrative remedies.  *Jones v.*

*Bock,* 549 U.S. 199, 216 (2007); *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003);

*Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).


          In the instant case, it is recommended that this issue of exhaustion of

administrative remedies be addressed in the context of a motion for summary judgment

with a more fully developed record regarding plaintiff's efforts to pursue administrative

remedies and the availability of such remedies to plaintiff.  *See Ruggerio v. County of*

*Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (recognizing exceptions to mandatory

exhaustion requirement).


42 U.S.C. § 1983

          42 U.S.C. § 1983 provides, in relevant part, that

          Every person who, under color of any statute, ordinance,
          regulation, custom, or usage, of any State . . . subjects, or causes
          to be subjected, any citizen of the United States . . . to the
          deprivation of any rights, privileges, or immunities secured by the
          Constitution and laws, shall be liable to the party injured in an
          action at law, suit in equity, or other proper proceeding for
          redress . . . .

"By its terms . . .the statute creates no substantive rights; it merely provides remedies

for deprivations of rights established elsewhere."  *City of Oklahoma City v. Tuttle*, 471

U.S. 808, 816 (1985).  Thus, the first inquiry in any § 1983 suit is whether plaintiff's

federally protected rights have been violated.  *Russell v. Coughlin*, 910 F.2d 75, 77 (2d

Cir. 1990), *citing Martinez v. California*, 444 U.S. 277, 284 (1980).


### First Amendment Denial of Religious Services

"It is well established that prisoners have a constitutional right to

participate in congregate religious services."  *Salahuddin v. Coughlin*, 993 F.2d 306,

308 (2d Cir. 1993), *citing Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.), *cert. denied*,

492 U.S. 909 (1989) ("prisoners should be afforded every opportunity to attend religious

services, whenever possible.").  "A prisoner's first amendment right to the free exercise

of his religious beliefs may only be infringed to the extent that such infringement is

'reasonably related to legitimate penological interests.'"  *Young*, 866 F.2d at 570,

*quoting O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).


Plaintiff's allegations that he has been repeatedly denied attendance at

Nation of Islam Services and Friday night classes since his arrival at Attica despite

complaints to Deputy Superintendent Dolce and an investigation by C.O. Robinson are

sufficient to state a plausible religious exercise claim.  *See Young*, 866 F.2d at 570

(allegations that plaintiff was precluded from attending religious services, classes, and

any of the activities associated with the celebration of Ramadan were sufficient to state

a claim).  Accordingly, it is recommended that this aspect of defendants' motion to

dismiss be denied.

### First Amendment Interference with Legal Mail

"Interference with legal mail implicates a prison inmate's rights to access the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).  To state a claim, however, such interference must be alleged to be more than an isolated instance. *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001), *citing Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986).  In addition, to state a claim of denial of access to the courts due to interference with legal mail, plaintiff must allege that the interference hindered plaintiff's efforts to pursue his legal claims, *i.e.*, caused actual injury such as the dismissal of an otherwise meritorious claim.  *Davis*, 320 F.3d at 351, *citing Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997), *cert. denied*, 525 U.S. 823 (1998).  As plaintiff alleges only one instance of C.O. Buth opening his incoming legal mail, it is recommended that this claim be dismissed as an isolated instance.

### First Amendment Retaliation

In order to survive a motion to dismiss, a plaintiff asserting First Amendment retaliation claims must plausibly allege: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action.  *Davis*, 320 F.3d at 352.  "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  *Id.* at 353, *quoting Dawes*, 239 F.3d 489, 493 (2d Cir. 2001).  "Insulting or disrespectful comments directed at an

inmate generally do not rise to this level." *Id., quoting Dawes*, 239 F.3d at 492.  In other

words, the alleged retaliation must be more than *de minimis*.


To plausibly allege causation, plaintiff must allege facts suggesting that

the protected conduct was a substantial or motivating factor in the prison official's

determination to take action against him.  *Burton v. Lynch*, 664 F. Supp.2d 349, 367 (2d

Cir. 2009).   Circumstantial facts indicating retaliatory motive include: (1) temporal

proximity between the protected activity and the alleged retaliatory act; (2) an inmate's

prior good disciplinary record; (3) vindication at a hearing on the matter; and (4)

statements by the defendant concerning his motivation.  *Id., quoting Baskerville v. Blot*,

224 F. Supp.2d 723, 732-33 (S.D.N.Y. 2002).   "[A] complaint which alleges retaliation in

wholly conclusory terms may safely be dismissed on the pleadings alone."  *Flaherty v.

Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).


### Retaliatory Transfer into Attica

Although a prisoner has no liberty interest in remaining at a particular

correctional facility, prison authorities may not transfer an inmate in retaliation for the

exercise of constitutionally protected rights.  *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir.

1998).  In the instant case, however, plaintiff's allegations that he was transferred back

to Attica in retaliation for the permanent injunction fails for lack of a plausible

connection between the alleged protected activity and the transfer.  The issuance of the

permanent injunction on June 23, 2010 is insufficient to plausibly suggest retaliatory

motive given that the preliminary injunction had been in place since December 18, 2007

and the permanent injunction, which was issued while plaintiff was housed at the Elmira

Correctional Facility four months prior to plaintiff's transfer to Attica, was rendered moot by a change in Inmate Grooming Standards[8] effective more than two months before plaintiff's transfer to Attica.  Accordingly, it is recommended that plaintiff's claim of retaliatory transfer against Commissioner Fischer and Deputy Commissioner LeClaire be dismissed.

### November 6, 2010 - Boots & Recreation

C.O. Cartwright's direction that plaintiff mail out his boots and return to his cell rather than attend recreation on November 6, 2010 does not rise to the level of conduct which would deter an ordinary inmate from exercising his constitutional rights. In any event, for the reasons set forth above, the issuance of the permanent injunction on June 23, 2010 is insufficient to plausibly suggest retaliation as C.O. Cartwright's motive for denying plaintiff continued possession of his boots on November 6, 2010. Accordingly, it is recommended that C.O. Cartwright's motion to dismiss be granted with respect to plaintiff's claim of retaliation.

### November 29, 2010 - Denial of Breakfast & Lunch

Plaintiff's allegations that C.O. Piadlo denied plaintiff entry into the mess hall in retaliation for his prior lawsuit is wholly conclusory.  There is no allegation that C.O. Piadlo was aware of any protected activity by plaintiff occurring close in time to this incident and, as set forth above, even if C.O. Piadlo was aware of the issuance of

---

[8] Directive 4914, which regulates Inmate Grooming Standards, was modified on September 2, 2010 to allow the "dreadlock hairstyle."  06-CV-490 at Dkt. #297, p.15.

the permanent injunction, it is insufficient to establish retaliatory motive.  Accordingly, it

is recommended that C.O. Piadlo's motion to dismiss be granted with respect to

plaintiff's claim of retaliation.


*February 4, 2011 - Sick Call Note*

It is recommended that plaintiff's allegation that in retaliation for the filing

of a grievance against her, Nurse Sharpe "left a note to share between [C.O. Hendzel

and Nurse Cygren] prior to [plaintiff's] arrival at sick call," be dismissed for failure to

plausibly allege adverse action against plaintiff.


*August 21, 2011 Pat Frisk*

The United States Supreme Court has held that "prisoners have no

legitimate expectation of privacy."  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).  As a

result, cell searches and pat frisks, even if conducted for retaliatory reasons, cannot

constitute an adverse action as required to support a First Amendment retaliation claim.

*See Vogelfang v. Capra,* 889 F. Supp.2d 489, 509 (S.D.N.Y. 2012) ("inmate has no

right to be free from searches of any kind, including those alleged to be retaliatory");

*Henry v. Annetts*, No. 08 Civ. 286, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010)

(Cell searches and pat frisks are an ordinary part of prison life and do not deter the

average inmate from continuing to exercise First Amendment rights).  Accordingly,

plaintiff's allegations that C.O. Buth subjected plaintiff to a pat frisk on August 21, 2011

in retaliation for plaintiff filing a grievance against C.O. Buth on August 17, 2011, fails to

state a plausible claim of retaliation against C.O. Buth.  As a result, it is recommended

that C.O. Buth's motion to dismiss be granted with respect to plaintiff's claim of retaliation.

*September 1, 2011 Cell Search*

"Although a cell search is not considered to be actionable under § 1983, regardless of any retaliatory motives," allegations of more than a mere cell search, *to wit*, allegations that corrections officers "tore up" or "trashed" an inmates cell and confiscated or damaged personal property and/or legal papers, may be sufficient to plausibly allege conduct that would deter an inmate of ordinary firmness from exercising his constitutional rights. *See Phelan v. Hersh,* No. 10-CV-0011, 2011 WL 6031940, at *6 (N.D.N.Y. Sept. 13, 2011); *Shariff v. Poole*, 689 F. Supp.2d 470, 481 (W.D.N.Y. 2010); *Keesh v. Goord*, 04-CV-271, 2007 WL 2903682, at *8 (W.D.N.Y. Oct. 1, 2007). Thus, plaintiff's allegation that C.O. Steck trashed his cell and removed legal documents and food for fasting from his cell immediately after Sgt. Leonard interviewed plaintiff regarding his rape complaint against C.O. Buth is sufficient to state a claim of retaliation against C.O. Steck.

**Eighth Amendment**

To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities; and (2) subjectively, the defendant acted with a sufficiently culpable state of mind, such as deliberate indifference to the inmate's health or safety. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

*Sexually inappropriate pat frisks*

Although sexual abuse of a prisoner by a corrections officer may in some circumstances violate a prisoner's right to be free from cruel and unusual punishment, isolated episodes of forcible touching "do not involve a harm of federal constitutional proportions as defined by the Supreme Court." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997); *See Davis v. Castleberry*, 364 F. Supp.2d 319, 321 (W.D.N.Y. 2005) (allegation of sexual fondling during a single pat frisk is not sufficiently egregious to state a claim under § 1983); *Montero v. Crusie*, 153 F. Supp.2d 368, 373 (allegation that defendant squeezed plaintiff's genitalia during pat frisks on several occasions not sufficiently serious to state 8th amendment claim).   Accordingly, it is recommended that the motion to dismiss be granted with respect to plaintiff's complaints of sexually inappropriate pat frisks by C.O. Cartwright and C.O. Buth.   As plaintiff's failure to intervene claim against Sgt. Erhardt and C.O. Klodzinski and any suggestion of such a complaint against C.O. Steck is dependent upon a plausible claim of a constitutional violation by C.O. Cartwright and C.O. Buth, it is recommended that these claims be dismissed as well.

*November 29, 2010 - Denial of Breakfast & Lunch*

As defendant concedes (Dkt. #32, pp.21-22), plaintiff's allegation that C.O. Piadlo denied him breakfast and lunch because his dreadlocks were not fastened with a rubberband are sufficient to state an Eighth Amendment Claim.   *Dwonczyk v. Syracuse City Police Dep't.,* 710 F. Supp.2d 248, 269 (N.D.N.Y. 2008) ("Where a prisoner is deprived of two out of three meals served regularly each day, a constitutional violation may exist if that one meal is nutritionally inadequate."); *Brooks v.*

-20-

*Chappius*, 450 F. Supp.2d 220, 224 (W.D.N.Y. 2006).  Accordingly, it is recommended that this aspect of C.O. Piadlo's motion to dismiss be denied.


### Fourteenth Amendment Right of Access to the Court

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Lewis v. Casey*, 518 U.S. 343, 346 (1996), *quoting Bounds v. Smith,* 430 U.S. 817, 828 (1977).  Because prison law libraries are "only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts," allegations of denial of access to the prison law library are insufficient to state a claim; plaintiff must also allege that such a denial caused actual injury, such as the dismissal of an otherwise meritorious claim.  *Id.* at 349-351; *See Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (prejudice is an essential element of a claim of denial of access to the court).  "A delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation."  *Id.*


Although the Court notes that plaintiff's allegations are not that he was denied reasonable access to the law library, but that the additional access he was afforded remained insufficient given the number of court deadlines he was facing, plaintiff's allegations that Deputy Superintendent Dolce and C.O. Adamy were hindering his efficiency in the law library and arbitrarily denying his request for additional time, combined with his allegation that plaintiff's appeal was dismissed in February of 2011

and that he has been unable to complete several appeals deadlines and file Notices of Appeal because of the limitations placed upon his access to the law library,  are sufficient to proceed to discovery.

In contrast, plaintiff's allegation that a complaint to Albany was sent back because he was denied sufficient writing supplies by Deputy Superintendent Dolce is insufficient to plausibly allege actual injury.  Although plaintiff's opposition to the motion to dismiss argues that defendants failure to provide him with adequate paper has prevented him from communicating with the court and states that he has been "unable to address post-conviction relief and appeals in Article 78 since his arrival," such allegations fail to demonstrate actual prejudice, *i.e.*, that the deadline for doing so has passed, thereby foreclosing, or otherwise prejudicing, plaintiff's claims.

## Fourteenth Amendment Right to Medical Confidentiality

An inmate's right to prevent the unwanted disclosure of his personal health information is protected by the due process clause of the Fourteenth Amendment.  *Davidson v. Desai*, 817 F. Supp.2d 166, 191 (W.D.N.Y. 2011).  That right is not absolute, however, but varies with the condition and may be compromised to account for legitimate penological interests.  *Powell v. Schriver*, 175 F.3d 107, 111-12 (2d Cir. 1999).  Medical conditions warranting constitutional protection within the prison context are generally limited to diagnoses which are both serious and intimate in nature, such that their disclosure would likely expose an inmate to ridicule, discrimination or potential violence.  *See Myers v. Dolac,* No. 09-CV-6642, 2013 WL 5175588, at *7 (W.D.N.Y. Sept. 12, 2013) (collecting cases determining that HIV positive status,

hepatitis C, sickle cell anemia and transexualism are protected while fibromyalgia, arthritis and sleep apnea are not).  As plaintiff's complaints of a persistent cough fail to rise to the level of a serious and deeply personal medical concern, his allegation that Nurse Cygren permitted C.O. Hendzel to remain in the sick call room with plaintiff fails to state a claim.  Accordingly, it is recommended that the motion to dismiss be granted with respect to plaintiff's claim of lack of medical confidentiality against Nurse Cygren and C.O. Hendzel.

## Fourteenth Amendment Right to Expungement

"A prisoner has a limited constitutional right to have incorrect information expunged from his record."  *Farinaro v. Coughlin*, 642 F. Supp. 276, 281-82 (S.D.N.Y. 1986), *citing Paine v. Baker*, 595 F.2d 197 (4th Cir.), *cert. denied*, 444 U.S. 925 (1979); *See Pruett v. Levi*, 622 F.2d 256, 258 (6th Cir. 1980) (recognizing constitutional claim where, following a proper request for correction, false information is used to deprive a person of liberty); *Silverman v. Pennsylvania,* 527 F. Supp. 742, 745 (W.D. Pa. 1981), *aff'd.,* 707 F.2d 1395 (3d Cir. 1983).  More specifically, "a plaintiff has a clearly established constitutional right to have accurate information in his prison file when such information is relied on in a parole hearing."  *Lowrance v. Coughlin*, 862 F. Supp. 1090, 1119 (S.D.N.Y. 1994).

To state a claim, plaintiff must allege that particular information is false; that it is probable that such information will be relied upon for decision regarding parole or good time credits, not merely for decisions about internal matters such  as work assignments; that the error must not be merely technical, but must pertain to the

inmate's prior criminal record or disciplinary offenses; and that the inmate requested

that the information be expunged, but prison officials refused.  *Farinaro*, 642 F. Supp. at

282, *citing Paine*, 595 F.2d at 201-03.


Plaintiff's allegations that Deputy Superintendent Chappius and C.O.

O'Connors placed incorrect information regarding his escape risk in records used for

parole and transfer determinations and refused to correct such information, are

sufficient to state a claim.


### Personal Involvement

It is well settled that the personal involvement of defendants in an alleged

constitutional deprivation is a prerequisite to an award of damages under § 1983.

*Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865,

873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir.

1989).  Personal involvement may be shown by evidence that: (1) the defendant

participated directly in the alleged constitutional violation; (2) the defendant, after being

informed of the violation through a report or appeal, failed to remedy the wrong; (3) the

defendant created or permitted the continuation of a policy or custom under which

unconstitutional practices occurred; (4) the defendant was grossly negligent in

supervising subordinates who committed the wrongful acts; or (5) the defendant

exhibited deliberate indifference to the rights of inmates by failing to act on information

indicating unconstitutional acts were occurring.  *Colon*, 58 F.3d at 873.  "There is no

*respondeat superior* liability in § 1983 cases."  *Green v. Bauvi*, 46 F.3d 189, 194 (2d

Cir. 1995). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

### *Commissioner Fischer & Deputy Commissioner LeClaire*

Plaintiff's allegations that Commissioner Fischer and Deputy Commissioner LeClaire sanctioned the conduct of defendants who denied plaintiff access to the messhall because his dreadlocks were fastened with his hair, as evidenced by those defendants informing plaintiff that he could write whoever he wanted, and that the misinformation in his inmate record has been "created for retaliation purposes by Mr. LeClaire and Fischer and other former defendants in plaintiff's pending lawsuit on religious exercise for wearing dreadlocks," are wholly conclusory and fail to plausibly alleged defendants' personal involvement in the denial of plaintiff's constitutional rights. Accordingly, it is recommended that this aspect of defendants' motion to dismiss be granted.

### *Superintendent Bradt*

Plaintiff's allegations that Superintendent Bradt made rounds in the block with Deputy Superintendent Dolce prior to plaintiff being denied attendance at Nation of Islam Services; sanctioned the conduct of  defendants who denied plaintiff access to the messhall because his dreadlocks were fastened with his hair, as evidenced by those defendants informing plaintiff that he could write whoever he wanted; and directed another officer to investigate plaintiff's complaint are wholly conclusory and fail to plausibly alleged defendants' personal involvement in the denial of plaintiff's constitutional rights.

### Deputy Superintendent Chappius

Plaintiff's allegation that Deputy Superintendent Chappius sanctioned the conduct of defendants who denied plaintiff access to the messhall because his dreadlocks were fastened with his hair, as evidenced by those defendants informing plaintiff that he could write whoever he wanted, is wholly conclusory and fails to plausibly allege defendant's personal involvement in the denial of plaintiff's constitutional rights.

### Captain Brown

Plaintiff's allegations that Captain Brown assigned Sgt. Cunningham to investigate plaintiff's complaint and called him a liar and "has allowed other officers to read my personal mail" fail to plausibly allege defendant's personal involvement in the denial of plaintiff's constitutional rights.

### Sgt. Cunningham

Plaintiff's allegations that Sgt. Cunningham had conducted a previous investigation into a prior complaint about the denial of electricity to plaintiff's cell and that Sgt. Cunningham was the area supervisor when C.O. Steck searched his cell fail to plausibly allege defendant's personal involvement in the denial of plaintiff's constitutional rights.

### Sgt. Leonard

Plaintiff's allegation that Sgt. Leonard interviewed him about his rape complaint several days before C.O. Steck searched plaintiff's cell fails to plausibly allege defendant's personal involvement in the denial of plaintiff's constitutional rights.

Health Insurance Portability & Accountability Act

The Health Insurance Portability & Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320 *et seq*., does not provide a private right of action for disclosure of confidential medical information.  *McKnight v. Middleton*, 699 F.Supp.2d 507, 532 (E.D.N.Y. 2010), *aff'd* 434 Fed. Appx. 32 (2d Cir. 2011), *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006);. Accordingly, it is recommended that plaintiff's cause of action pursuant to the HIPAA be dismissed for failure to state a claim.

Prison Rape Elimination Act

The Prison Rape Elimination Act of 2003 ("PREA"), was enacted to address the problem of rape in prison by creating a commission to study the issue and to develop national standards for the detection, prevention, reduction and punishment of prison rape.   42 U.S.C. § 15601.  Nothing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.  *See Breer v. Medor*, No. 2:12-CV-53, 2013 WL 4456896, at *6 (D. Vt. Aug. 16, 2013); *Holloway v. Dep't  of Corrections,* No. 3:11 CV1290, 2013 WL 628648, at *2 (D. Ct. Feb. 20, 2013); *Chao v. Ballista*, 772 F. Supp.2d 337, 341 n.2 (D. Mass 2011); *Ball v. Beckworth*, No. CV 11-0037, 2011 WL 4375806, at *4 (D. Mont. Aug. 31, 2011); *LeMasters v. Fabian*, No. 09-702, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009); *Bell v. County of Los Angeles*, CV 07-8187, 2008 WL 4375768, at *6 (C.D.Cal. 2008); *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. 2008); *Rindahl v. Weber*, CIV 08-4041, 2008 WL 5448232, at *1 (D. S.D. 2008).

Accordingly, it is recommended that plaintiff's cause of action pursuant to PREA be dismissed for failure to state a claim.

Religious Land Use and Institutionalized Persons Act

The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1 ("RLUIPA"), proscribes the government from imposing a substantial burden on the religious exercise of an inmate, even if the burden is the result of a rule of general applicability, unless the government demonstrates that the imposition of the burden on that inmate is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling interest.  42 U.S.C. § 2000cc-1(a). RLUIPA "does not authorize monetary damages against state officers in their official capacities and does not create a private right of action against state officers in their individual capacities."  *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013) (internal citation omitted).  Although RLUIPA would permit injunctive relief, plaintiff is no longer housed at Attica, rendering his complaints of repeated denial of access to religious services at Attica moot.  *Salhuddin*, 467 F.3d at 272 ("inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief."). Accordingly, it is recommended that plaintiff's cause of action pursuant to RLUIPA be dismissed for failure to state a claim.

## CONCLUSION

For the reasons set forth above, it is recommended that defendants' motion to dismiss (Dkt. #32), be granted with respect to plaintiff's claims against defendants in their official capacities, except in so far as plaintiff seeks

-28-

injunctive relief against Commissioner Fischer and Deputy Commissioner LeClaire in their official capacities for expungement of misinformation relating to plaintiff's escape risk and disciplinary charges arising from the November 11, 2011 cell search.

Furthermore, for the reasons set forth above, it is recommended that defendants' motion to dismiss (Dkt. #32), be granted with respect to plaintiff's claims against Commissioner Fischer; NYSDOCS Deputy Commissioner LeClaire; Attica Superintendent Bradt; C.O. Cartwright; C.O. Klodzinski; C.O. Buth; Captain Brown; Sgt. Cunningham; Sgt. Leonard; C.O. Hendzel; Nurse Sharpe; and Nurse Cygren in their individual capacities.

Furthermore, for the reasons set forth above, it is recommended that defendants' motion to dismiss (Dkt. #32), be granted except with respect to the following claims set forth in plaintiff's second amended complaint:

(1) denial of attendance at religious services against Deputy Superintendent Dolce and Captain Robinson;

(2) retaliatory cell search on September 1, 2011 against C.O. Steck;

(3) retaliatory denial of water and breakfast on November 1, 2011 against C.O. LaCappriuccia;

(4) retaliatory cell sell search on November 11, 2011 against Sgt. Erhardt; C.O. Malik; and C.O. Carney;

(5) retaliatory denial of electricity on November 17, 2011 against C.O. Malik;

(6) denial of meals on November 29, 2010 against C.O. Piadlo;

(7) denial of sufficient access to the law library against
Deputy Superintendent Dolce and C.O. Adamy;

(8) expungement of false information in plaintiff's prison
file regarding his risk of escape against Deputy
Superintendent Chappius and C.O. O'Connors; and

(9) denial of due process in disciplinary hearing against
Captain Robinson.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:


This Report, Recommendation and Order be filed with the Clerk of the

Court.


ANY OBJECTIONS to this Report, Recommendation and Order must be

filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P.

72(b) and Local Rule 72(b).


The district judge will ordinarily refuse to consider *de novo* arguments, case

law and/or evidentiary material which could have been, but were not presented to the

magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts*

*Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).


Failure to file objections within the specified time or to request an extension

of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474

U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55

(2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
               **August 27, 2014**

                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**